# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **JOSE MAGANA BARAJAS,** Movant, | **CRIMINAL NO. 1:05-CR-0477-8-CC-GGB** |
| v. | **CIVIL ACTION NO. 1:09-CV-03459-CC-GGB** |
| **UNITED STATES OF AMERICA,** Respondent. | **MOTION TO VACATE 28 U.S.C. § 2255** |

## FINAL REPORT AND RECOMMENDATION

Jose Magana Barajas ("Barajas" or "Defendant") has filed a motion to vacate sentence under 28 U.S.C. § 2255 [Doc. 1471]. Barajas seeks to challenge the constitutionality of his 210-month sentence that was imposed on September 16, 2008, following his guilty plea on April 24, 2006. [Doc. 1162]. Presently before the Court for consideration are: (1) Barajas's § 2255 motion to vacate [Doc. 1471]; (2) the United States of America's (hereinafter "Government") response to Barajas's motion to vacate [Doc. 1489]; and (3) Barajas's reply to the Government's response [Doc. 1493]. In addition, Barajas has filed a supplement to his motion to vacate [Doc. 1565], to which the Government has responded [Doc. 1576], and Barajas has replied [Doc. 1577].

## I. BACKGROUND

On April 24, 2006, Barajas entered a negotiated plea of guilty to Count One of the superseding indictment, charging him and others with conspiring to (1) possess with intent to distribute at least 5 kilograms of cocaine, and (2) possess with intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. [Docs. 140, 545]. Barajas entered into a written plea agreement with the Government, in which Barajas waived his right to appeal or collaterally attack his sentence in the plea agreement. [Doc. 545 at 7, ¶ 14]. However, Barajas reserved the right to appeal an upward departure from the otherwise applicable sentencing guideline range. [*Id.*]. Barajas also reserved his right to appeal if the Government appealed the sentence. [*Id.*].

Paragraph five of Barajas's plea agreement provided:

> Based upon the evidence currently known to the Government, the Government agrees to recommend, and the defendant agrees not to oppose, the following applications of the Sentencing Guidelines:
>
> a. The applicable offense guideline is Section 2D1.1(c)(1);
> b. The quantity of controlled substances attributable to Defendant for sentencing purposes is over one hundred and fifty (150) kilograms of a mixture or substance containing a detectable amount of cocaine, and over 1.5 kilograms of actual methamphetamine.

2

AO 72A
(Rev.8/82)

The parties acknowledge that these recommendations are not binding on the Court or the Probation Office.

[Doc. 545 at 3].

The plea agreement also provided that the Government would recommend that the defendant be sentenced to the low end of the applicable sentencing guideline range and that defendant agreed not to request a sentence outside the applicable sentencing guideline range as determined by the court. [*Id.* at 3-4].

The plea agreement did not address whether defendant would be given an adjustment for his role in the offense pursuant to U.S.S.G. § 3B1.1(c) which provides for a two level increase ". . . if the defendant was an organizer, leader, manager, or supervisor in any criminal activity."

The pre-sentence report ("PSR") prepared by the Probation Office calculated a base offense level of 38 based on the quantity of controlled substances attributed to the defendant.[1]

---

[1] The PSR found that defendant was responsible for 6,350.3 grams (6.35 kilograms) of methamphetamine. (PSR ¶ 96) However, the PSR mistakenly stated that the plea agreement provided that defendant will be responsible for at least 150 kilograms of cocaine and at least **150 kilograms of methamphetamine.** (*Id.*). In fact, the plea agreement provided that the defendant would be responsible for at least 150 kilograms of cocaine and **1.5 kilograms of methamphetamine**. Neither party has raised this issue. However, I have considered the effect of this mistake in the PSR, and I have concluded that it was harmless because the mistake did not change the guidelines calculation. Regardless of the quantity of methamphetamine attributed to the defendant, his base offense level would have been 38 because of the 150 kilograms

3

The PSR also recommended a two-level upward adjustment for defendant's leadership role in the offense. (PSR, ¶ 99). The PSR stated in relevant part:

> When customers of the organization needed methamphetamine, Javier Alvarez-Lopez contacted either Jose Magana Barajas or his brother "Abrahm." . . . . In September 2005, "Abrahm" left the Northern District of Georgia and Jose Magana Barajas took over control of his portion of the operations in his absence. . . . . During the conspiracy, Magana-Barajas directed the activities of Jose Angel Viorato-Lopez and Jose Luis Pimental.

(PSR, ¶ 29).

With a base offense level of 38, an upward adjustment of 2 points for his leadership role in the offense, and a downward adjustment of 3 points for acceptance of responsibility, the PSR arrived at a total offense level of 37. (PSR, ¶ 103). The custody guideline range for that offense level (with a criminal history category of I) was 210 - 262 months. (PSR p. 38).

Barajas's counsel did not file any objections to the PSR.

The sentencing took place on September 16, 2008. [Doc. 1370]. Barajas's attorney argued for a two-level downward departure, in effect arguing that Barajas should not receive the two-point enhancement for a leadership role. [*Id.* at 3-4]. He argued that Barajas's brother ran the methamphetamine lab, that Barajas was just a

---

of cocaine properly attributed to him. U.S.S.G. § 2D1.1(c)(1).
  Moreover, as discussed below, the district court did not base the two point upward adjustment for defendant's role in the offense on the quantity of methamphetamine attributable to defendant.

4

worker like the other individuals who had been arrested, and Barajas had only been in the United States for 45 days to two months prior to his arrest. [*Id.* at 8]. However, the attorney admitted that Barajas had come to the United States because his brother wanted to teach him the "business," after which the brother went back to Mexico for thirty days. [*Id.*].

The government argued that the two-point enhancement was justified by the fact that Barajas was left in charge of the lab by his brother, and that Barajas supervised the work of two other individuals involved in the conspiracy. [Doc. 1370 at 9].

The district court decided to impose the two-point enhancement because of the statements in the PSR that Barajas was in charge of the methamphetamine lab. The Court noted that Defendant had not filed any objections to the PSR. The Court also found that there was no basis for a downward departure. [*Id.*]. The Court then sentenced Barajas to 210 months in prison and five years on supervised release. [Doc. 1162].

Barajas appealed, arguing that the district court did not comply with Rule 11 of the Federal Rules of Criminal Procedure during the plea hearing. *United States v. Barajas*, 334 F. App'x 940 (11th Cir. 2009). The United States Court of Appeals for the Eleventh Circuit found no plain error in Barajas's guilty plea and affirmed Barajas's conviction on June 12, 2009. *Id.*

5

On December 8, 2009, Barajas filed this § 2255 motion [Doc. 1471]. Both the Government and Barajas characterize the motion as raising the following ineffective assistance of counsel grounds:

1. counsel "assured" Barajas "that his cooperation was taken into consideration by the U.S. Attorney's Office" and that Barajas "would not have to assume responsibility for acts [] in which he did not directly participate" [Doc. 1471 at 3];

2. Barajas "is being punished for a much larger amount of drugs and length of participation in the conspiracy" because counsel failed to "fully investigat[e] and research[] the relevant issues of the conspiracy" and "obtain the best possible consideration from the Government and the Court . . . ." [*Id.* at 3-4];

3. counsel did not adequately prepare Barajas for sentencing and failed to object to errors in the presentence investigation report ("PSR") [*Id.* at 8-9];

4. at sentencing, Barajas attempted to protest the Court's judgment, but counsel "induced him to remain quiet" [*Id.* at 4];

5. Barajas's speedy trial rights were violated by counsel's failure to object to the delay between his plea and sentencing [*Id.* at 9-10];

6. counsel "convinced [Barajas] to agree to a plea agreement" by assuring Barajas that his sentence would be between 72 and 96 months "depending on [Barajas] having a clean record and the results of his cooperation" [Doc. 1471 at 4]; and

7. counsel "failed to negotiate favorable results" for Barajas [Doc. 1471 at 8].

[Docs. 1471, 1565].

AO 72A
(Rev.8/82)

After filing his motion, Barajas obtained new counsel, who sought and was granted permission from the Court to file a supplement to the original motion. [Docs. 1534, 1536, 1565]. In the supplement, Barajas provides additional arguments in support of Grounds Three and Six above. [Doc. 1565]. The Government has filed responses to the original motion and the supplemental brief. [Docs. 1565, 1576].

## II. <u>STANDARD OF REVIEW</u>

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Barajas must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no

7

relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief. *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). As discussed below, the motion and record of the case conclusively show that Barajas is not entitled to relief or to an evidentiary hearing.

## III. **DISCUSSION**

### A. Barajas's Waiver Precludes Him From Raising Ineffective Assistance Claims Related to Sentencing.

The Government contends that the first five grounds raised by Barajas in his motion should not be entertained by the Court because Barajas, in the negotiated plea agreement, waived the right to collaterally attack his sentence. The waiver signed by Barajas states:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of his sentence.

[Doc. 545 at 7, ¶ 14]. Barajas also signed a separate acknowledgment in the agreement that "I understand that the appeal waiver contained in the Plea Agreement will prevent

8

me, with the narrow exceptions stated, from . . . challenging my sentence in any post-conviction proceeding." [*Id.* at 14].

A defendant who enters into a plea agreement may waive his right to appeal or collaterally challenge his sentence, and the waiver will be enforced if it is made knowingly and voluntarily. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). "One of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (quoting *United States v. Rutan*, 956 F.2d 827, 830 (8th Cir. 1992)). In order to prevail in an argument to enforce a waiver, the Government must show that either "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351.

Barajas acknowledged at the plea hearing that the plea agreement provided his intention to plead guilty, that he had signed it, and that he had no questions for the Court. [Doc. 1369 at 2, 21, 24]. In addition, the Court addressed the negotiated appeal waiver with Barajas during the Rule 11 plea colloquy as follows:

9

> THE COURT: Do you also understand that under some circumstances you or the Government may have the right to appeal any sentence this Court might impose pursuant to the guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In your plea agreement – did he agree to a limited waiver?
>
> MR. STEWART (Barajas's Counsel): I think there was, Your Honor, yes, sir.
>
> THE COURT: Okay. Do you understand that in your plea agreement you agreed not to appeal your sentence unless the sentence is an upward departure from the applicable custody guideline range?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Or if the Government appeals, then you will be able to appeal.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Only in those two instances will you be allowed to appeal your sentence.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that you also gave up your right to collaterally attack your sentence in a post-conviction hearing pursuant to Section 2255?
>
> THE DEFENDANT: Yes.

[Doc. 1369 at 15-16].

It is clear from the record that Barajas knowingly and voluntarily waived his right to appeal and collaterally challenge his sentence. Barajas specifically acknowledged by

AO 72A
(Rev.8/82)

signing the appeal waiver that he understood and agreed to waive his appeal rights. [Doc. 545]. Further, the Court explained to Barajas during the plea colloquy that he was waiving his right to collaterally attack his sentence by signing the appeal waiver, and Barajas indicated that he understood that he had waived that right. [Doc. 1369 at 16]; *see United States v. Stevenson*, 131 F. App'x 248, 250 (11th Cir. May 12, 2005) (holding that, for a waiver to be valid, "during the plea colloquy, the district court must at least refer to the fact that the defendant is waiving his rights to appeal his sentence under most or certain circumstances"). Thus, Barajas's waiver is valid.

When a Movant challenges the constitutionality of his conviction or sentence after having waived the right to do so in a plea agreement, "the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Finding that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing," the Eleventh Circuit opined that to hold otherwise would "permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective

11

assistance, thus rendering the waiver meaningless." *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).

Here, Barajas's claims in Grounds Two through Five deal with sentencing issues and do not relate to the negotiation of the plea or waiver. Thus, Barajas's waiver of his rights to challenge his sentence is controlling with respect to his ineffective assistance of counsel claims in Grounds Two through Five. *See United States v. Smith*, 371 F. App'x 901, 904 (10th Cir. 2010) (holding defendant's claim that his trial counsel was ineffective for failing to object to PSR was within scope of appellate waiver contained in his plea agreement).

B.  <u>Barajas's Ineffective Assistance of Counsel Claims Not Precluded By the Waiver Are Without Merit.</u>

In Grounds One, Six and Seven, Barajas argues that counsel was ineffective because counsel made false assurances to him in order to convince him to enter into the plea agreement, and failed to negotiate a favorable plea agreement. These claims arguably relate to the negotiation of the plea or waiver. Thus, I will assume for purposes of this opinion that these claims are not barred by the waiver.

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The analysis is two-pronged, and the court may "dispose of ineffectiveness claims on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697

12

("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Barajas must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court must be "highly deferential," and must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "To overcome *Strickland*'s presumption of reasonableness, [Barajas] must show that 'no competent counsel would have taken the action that his counsel did take.'" *Allen v. Secretary, Florida Dep't of Corr.*, 611 F.3d 740, 751 (11th Cir. 2010) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

To meet the second prong, Barajas must also demonstrate that counsel's unreasonable acts or omissions prejudiced him. *See Strickland*, 466 U.S. at 694. To prevail on prejudice, Barajas must demonstrate "'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

13

Barajas has failed to meet either prong of the *Strickland* standard with regard to his claims that counsel (1) assured him that his cooperation was taken into consideration by the U. S. Attorney's Office; (2) assured him that he would not have to assume responsibility for acts in which he did not directly participate; and (3) convinced him to enter into a plea agreement by assuring him that he would receive a sentence between 72 and 96 months.

The plea agreement signed by Barajas indicated the statutory maximum and minimum penalties for his offense, and Barajas was informed of them during the plea hearing. The Court also discussed with Barajas at the plea hearing the potential sentence implications:

> THE COURT: Has anyone made any promises of leniency, a particular sentence or a light sentence or a concurrent sentence, probation, or held out to you any other inducement of any kind to get you to plead guilty? Has anyone promised you anything to --
>
> MR. STEWART (Barajas's Counsel): If I may, Your Honor, I think I know where his confusion is. He still has not been debriefed yet and it's been explained to him based on that debriefing the potential exists for some downward departures.
>
> THE COURT: For his - -
>
> MR. STEWART: For the sentencing.
>
> THE COURT: For his cooperation?
>
> MR. STEWART: Yes, sir.

14

THE COURT: Is that true, Mr. Magana?

THE DEFENDANT: Yes.

THE COURT: Okay. Have you been told by anyone what sentence the Court would actually impose in the event you pled guilty to Count One of this indictment?

MR. STEWART: And if I may interject again, Your Honor. Again, depending on his cooperation and downward departures at sentencing, I have advised him potentially what level that he would be at and what that range would be.

THE COURT: Is that based on your interpretation of the guidelines?

MR. STEWART: That is correct, Your Honor, and I've also explained it, that is just advisory to the Court.

THE COURT: Is that correct, Mr. Magana?

THE DEFENDANT: Yes.

THE COURT: Thank you. At this time I want to ask you a few questions about the United States Sentencing Commission Guidelines which are now advisory and not mandatory. Did you and your attorney talk about the U.S. Sentencing Commission Guidelines and what sentence you might receive pursuant to those guidelines?

THE DEFENDANT: Yes.

* * * * *

THE COURT: Do you understand that it is not possible to determine the guideline sentence for your case until after a presentence report has been prepared and submitted by the probation department and you and the Government have had an opportunity to read, examine, and challenge the facts found in that probation report? Do you understand that?

15

THE DEFENDANT: Yes.

THE COURT: Do you also understand that after it has been determined what guideline applies to a case, the judge has the authority, in some circumstances, to impose a sentence that is more severe or less severe than the sentence called for by the guideline?

THE DEFENDANT: Yes.

* * * * *

THE COURT: Do you understand that if the sentence is more severe than you expected you will still be bound by your plea and will have no right to withdraw it?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if I do not accept the sentencing recommendation in your plea agreement, should there be one, you will still be bound by your plea and will have no right to withdraw it?

THE DEFENDANT: Yes.

[Doc. 1369 at 13-15, 16-17].

Regardless of what Barajas's counsel allegedly told him about the possible sentence he could receive, this Court informed Barajas during his guilty plea hearing, and the plea agreement stated, that he faced a mandatory minimum sentence of ten years and a potential maximum sentence of life in prison. [Doc. 545 at 2; Doc. 1369 at 11]. Barajas was also informed that his ultimate sentence was up to the Court, and that he would be unable to withdraw his plea if the sentence were "more severe" than what he

16

expected. *See Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (rejecting ineffective assistance of counsel claim where statements made during plea colloquy indicated petitioner was advised of maximum sentence and that counsel's predictions as to sentence were not binding).

Barajas also appears to be arguing that the government violated the plea agreement by advocating for a two-level enhancement for Barajas's leadership role in the offense. Barajas contends that he and his counsel reasonably believed that the plea agreement meant that he would be sentenced based on a total offense level of 35 (38 less 3 levels for acceptance of responsibility) without any additional enhancements. However, the plea agreement did not address the application of the role in the offense provision of the Sentencing Guidelines, and Paragraph 12 of the plea agreement states that, "[e]xcept as expressly stated elsewhere in this Plea Agreement, the Government also reserves the right to make recommendations regarding application of the Sentencing Guidelines." Therefore, the government did not violate the plea agreement.

To the extent that Barajas is arguing that counsel erroneously advised him that he would be sentenced based on a total offense level of 35 without any other enhancements, again, this representation is contradicted by the explicit statements of the court and the plea agreement (quoted above). Moreover, the Court stated at the time of the sentencing that " a sentence under either the guidelines or pursuant to the factors outlined in

17

Section 3553 would be essentially the same." [Doc. 1370 at 11]. Therefore, Barajas cannot show that he was prejudiced by the guideline calculation that included an enhancement for his role in the offense.

In addition, Barajas has failed to meet the *Strickland* standard on his ineffective assistance claim that counsel "failed to negotiate favorable results" for Barajas. The right to effective assistance of counsel does not guarantee that counsel will be the best negotiator. *See United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) ("The Constitution does not ensure that lawyers will be good negotiators, locking in the best plea bargains available."). Thus, the claim, in itself, does not show how counsel was ineffective.

Furthermore, Barajas's claim is in conflict with his statements about his satisfaction with counsel. At the plea hearing, the Court specifically asked Barajas if he was "satisfied with the representation of [his] lawyer in this case," and Barajas answered "yes." [Doc. 1369 at 20]. Barajas made the same acknowledgment in his plea agreement: "I am fully satisfied with the representation provided to me by my attorney in this case." [Doc. 545 at 14]. Indeed, the 210-month sentence received by Barajas was lower than the maximum sentence of life that he faced and at the lowest end of his guideline range.

18

Finally, with respect to all of his claims, Barajas has not shown that there was a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. For all of these reasons, Barajas's ineffective assistance of counsel claims are without merit.

## III  CERTIFICATE OF APPEALABILITY

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. §2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Barajas has failed to make a substantial showing of the denial of a constitutional right. Barajas waived his right to collaterally attack his sentence, and the ineffective assistance of counsel claims not precluded by the waiver are without merit. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## IV.  CONCLUSION

19

Based on the foregoing, **I RECOMMEND** that Barajas's motion to vacate sentence [Doc. 1471] be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO RECOMMENDED**, this 16th day of March, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)